# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| WALTER JAMES QUINN, ) | CASE NO. 1:23-CV-00029-CEH |
| ) | |
| Plaintiff, ) | CARMEN E. HENDERSON |
| ) | UNITED STATES MAGISTRATE JUDGE |
| v. ) | |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | **MEMORANDUM OF** |
| ) | **OPINION & ORDER** |
| Defendant, ) | |
| ) | |

## I. Introduction

Plaintiff, Walter James Quinn ("Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 11). For the reasons set forth below, the Court AFFIRMS the Commissioner of Social Security's nondisability finding and DISMISSES Plaintiff's Complaint.

## II. Procedural History

On October 2, 2020, Claimant filed an application for DIB, alleging a disability onset date of August 18, 2020. (ECF No. 8, PageID #: 44). The application was denied initially and upon reconsideration, and Quinn requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On November 16, 2021, an ALJ held a hearing, during which Quinn, represented by counsel, and an impartial vocational expert testified. (*Id.*). On December 21, 2021, the ALJ issued a written decision finding Claimant was not disabled. (*Id.* at PageID #: 44-58). The ALJ's decision became final on November 9, 2022, when the Appeals Council declined further review. (*Id.* at PageID #: 30).

On January 9, 2023, Claimant filed his Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 9, 13). Claimant asserts the following assignments of error:

> (1) The ALJ erred at Step Three of the Sequential Evaluation when he failed to comply with the relevant Social Security Rulings, 14-2p and 19-2p, and find that the combination of Plaintiff's obesity, diabetes, and gout equaled a Listing.
>
> (2) The ALJ committed harmful error when he failed to properly apply the criteria of Social Security Ruling 16-3p and failed to find that the intensity, persistence and limiting effects of Plaintiff's symptoms, including pain, precluded him from engaging in substantial gainful activity on a full-time and sustained basis.
>
> (3) The ALJ erred at Steps Four and Five of the Sequential Evaluation when contrary to Ruling 83-10, he found that despite Plaintiff's obesity, gout and polyneuropathy, Plaintiff could perform work at the light level of exertion.

(ECF No. 9 at 1).

**III. Background**

   **A. Relevant Hearing Testimony**

At the hearing, Claimant testified that he experienced pain in his feet, ankles, knee, and hip and could not be on his feet for more than 90 minutes. (ECF No. 8 at PageID #: 70). If he was on his feet for 90 minutes, he would spend the rest of the day sitting to allow his feet to recover. (*Id.* at PageID #: 71). He also experienced pain from sciatica and struggled with depression and anxiety. (*Id.* at PageID #: 71-72). Every six to eight weeks, his elbow or hands would swell due to his gouty arthritis and he would have to keep his arm stationary. (*Id.* at PageID #: 74-75). He also experienced swelling in his feet about once a month and two to three times a year it would be so bad that he could not walk to the bathroom. (*Id.* at PageID #: 75-76). Claimant had recently been diagnosed with neuropathic leg pain, which caused constant leg pain. (*Id.* at PageID #: 77).

   **B. Relevant Medical Evidence**

The ALJ summarized Claimant's health records and symptoms in analyzing whether he

met or equaled a listing:

> Based on a review of the medical evidence that predates his alleged onset date by twelve months and the evidence from his onset date through the last piece of evidence that was submitted after the hearing, the claimant's physical condition has been compromised by his obesity and a constellation of signs and symptoms from his other severe physical impairments (Exhs. 1F, pp. pp. 6, 32, 40-41, 45, 49-50; 2F, p. 19; 3F, p. 7).
>
> The claimant's three-month average blood glucose levels have remained high and stable at 8.1 to 8.3 percent since May 16, 2019 (Exh. 2F, p. 19). On November 5, 2019, the claimant's nurse practitioner Jennifer Tessman, CNP, noted the claimant had gained over 100 pounds beyond his normal weight and he was receiving weight-related psychotherapy to lose weight (Exh. 1F, pp. 49-50). According to a recent treatment note from August 2021, the claimant had lost some weight and his body mass index had decreased from 58 in October 2020 to 56 kg/m2 approximately (Exh. 7F, p. 1). The claimant was diagnosed with gouty arthritis around November 3, 2014, based on the evidence, but the record fails to show a recent flare-up until October 2020, which has been responding gradually to a significant increase in his allopurinol (3,000 mg) and a closely-monitored subcutaneous dose of steroid (in light of his diabetes mellitus) (Exh. 1F, pp. 6, 45; 3F, p. 7). Functionally, on November 18, 2020, the claimant has been able "to shuffle around and do something" since his allopurinol was increased (Exh. 3F, p. 7). Additionally, on November 25, 2019, the claimant was in a car accident during which he sustained injuries to his left shin, left foot, right shoulder and neck pain on the right side of neck (Exh. 1F, pp. 40-41). The claimant was cleared to return to his work as a nursing assistant at the medium exertional level on December 5, 2019, and no radiological studies were recommended on the date of the accident or thereafter (Exh. 1F, pp. 40-41). Upon review of the medical evidence, the undersigned finds the claimant took off some time off of work around April 2020, during the Pandemic due to an acute episode of bronchitis as well, not a flare-up of gouty arthritis (Exh. 1F, p. 32; SSR 16-3p).
>
> . . . .
>
> Based on evidence that predates the claimant's alleged onset date, the claimant was receiving obesity-related psychotherapy to manage his weight and a mild form of recurrent depressive disorder, as evidenced by a treatment note from November 5, 2019 (Exh. 1F, pp. 49-50). The record does not provide any longitudinal therapy notes to provide any additional insight into how the claimant has responded to therapy except that he has continued to attend, suggesting an ameliorative effect that has encouraged compliance (SSR 16-3p). It appears from the record though that the claimant's depression remained mild until this past summer, when the medical record contains a reference to diagnoses of depression and anxiety on July 20, 2021, without any additional explanation to suggest a significant worsening that required urgent and more aggressive forms of mental health treatment (Exh. 6F, p.

3

3). The undersigned notes in May 2021, the claimant began experiencing significant effects from a previous bout of obstructive sleep apnea related to morbid obesity that was confirmed by a sleep study in 2014 (Exh. 6F, p. 8). After May 10, 2021, the claimant's CPAP was tested and the results of an autoPAP study revealed he maintained "excellent compliance and [he was receiving] excellent control" with the device, but there was a "large leak" that needed to be repaired, as evidenced by a no-show follow-up visit note from the claimant's sleep study nurse practitioner Michelle Sirey, APRN, CNP, on August 26, 2021 (Exh. 6F, pp. 8-9). In light of the longstanding nature of his sleep apnea and the recent occurrence of a leak that had motivated the claimant to seek treatment in May 2021, the evidence suggests the claimant's recent poor sleep quality caused his depression and anxiety to manifest in a manner that resulted in new diagnoses in July 2021. It appears from records received after the hearing, the claimant's CPAP was repaired prior to a follow-up appointment on August 26, 2021 (Exh. 7F, pp. 2-6). Although he has been sleeping much better with the adjustment, the evidence indicates a require a period of accommodation of three to four months to ensure ongoing efficacy (Exh. 7F, p. 2). For this reason, it would be reasonable to find the claimant's poor sleep-related exacerbations of depression and additional onset of anxiety would meet requirements of severe impairment in combination with his obesity and mental impairments related to his obesity (SSR 16-3p). Significantly, in August 2021, the claimant was prescribed Wellbutrin for his mental impairments, which is the first time in the record that suggests he was prescribed psychotropic medication (Exh. 7F, p. 10; but see generally Exhs. 1F; 2F; 3F; 4F; 5F; 6F).

(ECF No. 8, PageID #: 50-51).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

3. The claimant has the following severe impairments: gout, diabetes mellitus with diabetic polyneuropathy, obesity, lumbar spine disorder versus myalgia, depression, and anxiety (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except for the following nonexertional limitations. He can occasionally climb ladders, ropes, or scaffolds. He can frequently climb ramps and stairs. He can frequently stoop, kneel, crouch, and crawl. He is able to perform work with simple tasks and simple instructions with few, if any, workplace changes.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565.

. . .

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a)

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 18, 2020, through the date of this decision (20 CFR 404.1520(g)).

(ECF No. 8, PageID #: 47, 53, 55-56, 58).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**B. Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id*.

**C. Discussion**

Claimant raises three issues on appeal, arguing that (1) the ALJ erred at step three by failing to find that the combination of Claimant's obesity, diabetes, and gout equaled a listing; (2) the ALJ failed to properly apply the criteria of Social Security Ruling ("SSR") 16-3p; and (3) the ALJ erred in finding that Claimant could perform work at the light level of exertion despite his impairments. (ECF No. 9 at 1).

### 1. The ALJ did not err in concluding that Claimant did not meet or equal a listing.

Claimant's first argument addresses the ALJ's determination that Claimant's impairments did not meet or equal a listing. To meet a listing, the claimant "must satisfy all of the [listing's] criteria." *Nash v. Comm'r of Soc. Sec.*, No. 19-6321, 2020 WL 6882255, at *3 (6th Cir. Aug. 10, 2020). The claimant "bears the burden of showing that an impairment meets or equals a listed impairment." *Id.* If the ALJ's listing finding is supported by substantial evidence, based on the record as a whole, the Court will defer to the ALJ's finding, "[e]ven if the record could support an opposite conclusion." *Id.* at *4. Moreover, if the ALJ's listing finding is not supported by substantial evidence, the error is harmless if the claimant cannot show that his impairments met or medically equaled a listing. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014).

Here, the ALJ found that the evidence did not "satisfy the requisite medical criteria of any listed impairment" and "no acceptable medical source designated to make equivalency findings has concluded that the claimant's impairment(s) medically equal a listed impairment." (ECF No. 8 at PageID #: 47). The ALJ opined:

> Based on the longitudinal effects of the claimant's flare-up and damage from prolonged effects of gouty arthritis around August 2020, his residual myofascial pain that he sustained from his motor vehicle accident in November 2019, his obesity, and his diabetic neuropathy, the undersigned finds, while the claimant has significant functional limitations from his severe physical impairments, the medical evidence fails to establish the requisite severity or medical equivalency standard of Listings 1.15, 1.18, 11.14, and 14.09, with consideration to the guidance of obesity in "paragraph Q" of Section 1.00 and SSR 19-2p.

(*Id.* at PageID #: 47-48). After summarizing the requirements of the considered listings, the ALJ concluded that "the claimant's physical condition has been compromised by his obesity and a constellation of signs and symptoms from his other severe physical impairments." (*Id.* at PageID#: 50). The ALJ then summarized the evidence and his conclusion:

7

> The claimant's three-month average blood glucose levels have remained high and stable at 8.1 to 8.3 percent since May 16, 2019 (Exh. 2F, p. 19). On November 5, 2019, the claimant's nurse practitioner Jennifer Tessman, CNP, noted the claimant had gained over 100 pounds beyond his normal weight and he was receiving weight-related psychotherapy to lose weight (Exh. 1F, pp. 49-50). According to a recent treatment note from August 2021, the claimant had lost some weight and his body mass index had decreased from 58 in October 2020 to 56 kg/m2 approximately (Exh. 7F, p. 1). The claimant was diagnosed with gouty arthritis around November 3, 2014, based on the evidence, but the record fails to show a recent flare-up until October 2020, which has been responding gradually to a significant increase in his allopurinol (3,000 mg) and a closely-monitored subcutaneous dose of steroid (in light of his diabetes mellitus) (Exh. 1F, pp. 6, 45; 3F, p. 7). Functionally, on November 18, 2020, the claimant has been able "to shuffle around and do something" since his allopurinol was increased (Exh. 3F, p. 7). Additionally, on November 25, 2019, the claimant was in a car accident during which he sustained injuries to his left shin, left foot, right shoulder and neck pain on the right side of neck (Exh. 1F, pp. 40-41). The claimant was cleared to return to his work as a nursing assistant at the medium exertional level on December 5, 2019, and no radiological studies were recommended on the date of the accident or thereafter (Exh. 1F, pp. 40-41). Upon review of the medical evidence, the undersigned finds the claimant took off some time off of work around April 2020, during the Pandemic due to an acute episode of bronchitis as well, not a flare-up of gouty arthritis (Exh. 1F, p. 32; SSR 16-3p).
>
> Based on the totality of the evidence, the undersigned finds, while the claimant's severe physical impairments have caused him significant limitations in his work-related functioning, they have not required exertional limitations that have reduced him to sedentary work on a sustained, regular and continuing basis, or required the use of an ambulatory device that would meet criteria of Listing 1.15, 1.18, 11.14, and/or 14.09 during the current adjudicating period.

(*Id.* at PageID #: 50-51).

Claimant argues that "the ALJ failed to consider Plaintiff's diabetes with polyneuropathy according to Ruling 14-2p" because "[n]o mention was made of the relevant Ruling" and the ALJ "failed to analyze Plaintiff's diabetes throughout the sequential evaluation beyond an implication that Plaintiff's diabetes and obesity were related." (ECF No. 9 at 7-8). He also argues that "the ALJ erred when he failed to consider whether Plaintiff's obesity was medically equal to a listing." (*Id.* at 9). While Claimant recognizes that the ALJ considered Listing 14.09, which Claimant asserts is the "closest listing in this matter," he argues that "the ALJ failed to support his finding

8

with substantial evidence." (*Id.*).

The Commissioner responds that "[t]he ALJ considered the applicable listing, as required by the Ruling, so the decision should not be reversed because the ALJ did not cite to SSR 14-2p." (ECF No. 13 at 8). As to Listing 14.09, the Commissioner argues that the ALJ "not only considered the listing, but he explained why it was not met or medically equaled" and Claimant "has not pointed to any evidence showing that the ALJ's finding was in error." (*Id.* at 8-9). Concerning peripheral neuropathy, the Commissioner argues that the ALJ properly concluded "that Plaintiff had not required the use of an ambulatory device that would meet the criteria of listing 11.14." (*Id.* at 10). The Commissioner argues that the ALJ expressly acknowledged Plaintiff's obesity and noted that "the *longitudinal effects of the claimant's severe impairments* restricted him to a reduced range of light work with additional postural [] limitations" and the "the RFC was consistent with the prior administrative medical findings of state agency physicians" such that the ALJ's decision was supported by substantial evidence. (*Id.* at 11-12).

The Court finds Claimant's arguments meritless. As correctly indicated by the Commissioner,

> SSR 14-2p simply 'provides information about the types of impairments and limitations that result from diabetes mellitus' and 'provides guidance' as to how to evaluate disability claims arising from diabetes mellitus. Significantly, there is no requirement that this particular Social Security Ruling be specifically cited in conducting an analysis that follows its guidance.

*Dodson v. Comm'r of Soc. Sec.*, No. 5:18-CV-02263, 2019 WL 6841771, at *2 (N.D. Ohio Dec. 16, 2019). Thus, the simple failure to mention SSR 14-2p does not amount to error and the ALJ's analysis, including his discussion of Claimant's average blood glucose levels, makes clear that he considered Claimant's diabetes. (ECF No. 9 at PageID #: 50). Additionally, the discussion makes clear that the ALJ considered Claimant's obesity and its impact on his related impairments in

9

accordance with SSR 19-2p. (*Id.*).

As to Listing 14.09, Claimant wholly fails to address the criteria of the Listing or point to specific evidence to establish each of the criteria. *See Briere v. Kijakazi*, No. 1:21-CV-02323-SO, 2023 WL 2972944, at *6 (N.D. Ohio Feb. 24, 2023) ("[C]ourts have held that a plaintiff waives an argument that the ALJ failed to properly consider a listing where the plaintiff does not present evidence demonstrating that the plaintiff satisfied the criteria for the listing.") (collecting cases), *report & recommendation adopted*, 2023 WL 2673190 (N.D. Ohio Mar. 29, 2023). To the extent Claimant argues the ALJ failed to cite substantial evidence, the ALJ cited the lack of evidence to support the use of an ambulatory device that would meet the criteria of Listing 14.09. (ECF No. 9 at PageID #: 50); *see* 20 C.F.R. Part 404, Subpt. P, App. 1, § 14.09(A)(1)(a) ("Persistent inflammation or persistent deformity of: 1. One or more major joints in a lower extremity (see 14.00C8) and medical documentation of at least one of the following: a. A documented medical need (see 14.00C6) for a walker, bilateral canes, or bilateral crutches (see 1.00C6d) or a wheeled and seated mobility device involving the use of both hands (see 1.00C6e(i)); . . .."). The ALJ also correctly observed that no medical source had found that Claimant met or equaled a listing. (ECF No. 8 at PageID #: 47); *see Ennis-Hastings v. Comm'r of Soc. Sec.*, No. 1:23-CV-228, 2023 Wl 7018361, at *12 (N.D. Ohio Sept. 19, 2023), *report & recommendation adopted*, 2023 WL 7282843 (N.D. Ohio Nov. 3, 2023). Thus, substantial evidence supports the ALJ's finding that Claimant did not meet or equal a listing and the Court must defer to that decision. *Nash*, 2020 WL 6882255, at *4.

**2. Substantial evidence supports the ALJ's evaluation of Claimant's symptoms.**

In his second argument, Claimant challenges the ALJ's evaluation of his symptoms pursuant to SSR 16-3p. The evaluation of a claimant's subjective complaints rests with the

10

ALJ. *See Siterlet v. Sec'y of HHS*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. § 404.1529(c); SSR 16-3p, 2017 WL 5180304.

Beyond medical evidence, SSR 16-3p sets forth seven factors that the ALJ should consider: daily activities; location, duration, frequency, and intensity of the pain or other symptoms; factors that precipitate and aggravate the symptoms; type, dosage, effectiveness, and side effects of medication to alleviate pain or other symptoms; treatment other than medication; any measures other than treatment the individual uses to relieve symptoms; and any other factors concerning the individual's functional limitations and restrictions. 2017 WL 5180304 at *7-8. The ALJ need not analyze all seven factors but should show that she considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). SSR 16-3p states:

> [I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner.

The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms . . . and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304; *see also Felisky v. Bowen*, 35 F.2d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so."). While a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will

11

not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18CV1639, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (citing *Rogers*, 486 F.3d at 248–49), *report & recommendation adopted*, 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

Claimant argues that "[e]ven though the medical records supported Plaintiff's complaints regarding gout and diabetic polyneuropathy, the ALJ failed to account for Plaintiff's pain related to his gout flares and polyneuropathy" or "disabling pain which would interfere with the ability to sustain work activity." (ECF No. 9 at 12-13). Claimant asserts that "the ALJ failed to articulate any supportable rationale for his finding that Plaintiff's statements . . . were not entirely consistent with the medical evidence." (*Id.* at 13-14).

The Commissioner responds that no compelling reason exists to disturb the ALJ's determination of the subjective evidence. (ECF No. 13 at 14). The Commissioner argues that the ALJ "discussed the relevant evidence and reasonably concluded that Plaintiff had some limitations but failed to show that his symptoms were of the severity to preclude all work given his treatment history, positive response to medication, and the prior administrative medical findings." (*Id.*). The Commissioner points to the ALJ's discussion of Claimant's medications, treatment other than medication, and the State agency opinions. (*Id.* at 15-16). "[To] the extent Plaintiff cites to evidence he thinks supports his claim," the Commissioner argues this is "no more than an improper invitation for the Court to re-weigh the evidence." (*Id.* at 17).

Here, the ALJ concluded that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms" but Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (ECF No. 9 at PageID #: 54). The ALJ set

12

forth the relevant factors under SSR 16-3p and then explained his conclusion:

> Based on a longitudinal review of the evidence and the relevant factors set forth in SSR 16-3p, the undersigned finds the claimant was seeking treatment initially and primarily for his gout flare-up, which improved with the high dose of allopurinol (Exh. 1F; 2F, p. 19; 3F, p. 7). Since May 2021, the claimant's main reason to seek treatment has been for breakthrough effects of obstructive sleep apnea due to a leak in his CPAP, but the evidence shows that an adjustment to his CPAP improved his sleep quality by August 2021 (Exh. 6F, pp. 8-10; 7F, pp. 1-6).
>
> Although the additional effects of the claimant's obesity with a body mass index of 56 recently and the residual non-work-preclusive myalgia from the motor vehicle accident in November 2019 have exacerbated the effects of the claimant's painful gouty flare-up, his neurological functioning has not imposed greater than the exertional and postural limitations than the State Agency medical consultants opined through the reconsideration determination level through the date of this decision (Exhs. 1A; 3A).
>
> Mentally, based on a review of the totality of the evidence received before and after the hearing, the undersigned finds the treated effects of the claimant's mental impairments, obstructive sleep apnea, and gradual weight loss since his alleged onset date have imposed additional nonexertional mental limitations that the State Agency psychological consultants did not find through the reconsideration determination level (Exhs. 1F, pp. 49-50; 7F, pp. 8-10).
>
> As discussed, the claimant's compliance with outpatient treatment in the form of psychotherapy to support his weight loss and his recent introduction of psychotropic medication in August 2021 and the adjustment to his CPAP in August 2021 supports slightly more restrictive limitations than the State Agency consultants found through the reconsideration determination level, but only to the extent set forth in this finding (Exhs. 1A; 3A; but see Exhs. 1F, pp. 49-50; 7F, pp. 8- 10; SSR 16-3p).

(*Id.* at PageID #: 54-55).

Based on this discussion, the Court agrees with the Commissioner that the ALJ properly considered the relevant factors under SSR 16-3p. The ALJ specifically referenced Claimant's response to medication and treatment other than medication. (*Id.*). He also relied on the opinion of the State agency consultants and crafted an RFC in accordance with those opinions. (*Id.* at PageID #: 55, 88-89, 94). Thus, substantial evidence supports the ALJ's treatment of Claimant's symptom testimony. As the Court will not reweigh the evidence when reviewing an ALJ's decision, no

compelling reason exists for the Court to disturb the ALJ's credibility finding. *Cross*, 373 F. Supp. 2d at 732.

### 3. The ALJ's RFC for light work is supported by substantial evidence.

Claimant challenges the ALJ's conclusion that he could perform work at the light level of exertion. (ECF No. 9 at 14). Claimant asserts that "Ruling 83-10 requires that in order to perform work at the light level of exertion, a person must be able to stand and walk for 6 hours in an 8-hour workday" and "the combination of Plaintiff's obesity, chronic gout, and diabetic polyneuropathy clearly established that he was precluded from standing/walking the requisite 6 hours a day for work at the light level of exertion." (*Id.* at 16).

The Commissioner responds that Claimant "has not cited to any opinions that demonstrated greater limitations than noted in the RFC." (ECF No. 13 at 13). Additionally, the Commissioner argues that because the RFC was consistent with the opinion of the State agency consultants and "Plaintiff does not argue that the ALJ's assessment of the state agency [consultants] was not based on substantial evidence," the RFC is necessarily supported by substantial evidence. (*Id.* (quoting *Givhan v. Comm'r of Soc. Sec. Admin.*, No. 1:13 CV 611, 2015 WL 3408006, at *9 (N.D. Ohio May 27, 2015)).

The Court again agrees with the Commissioner. The ALJ crafted the RFC after considering the record, including "the State Agency medical consultants' physical assessments that restricted the claimant physically to a reduced range of light work with additional nonexertional postural limitations." (ECF No. 8 at PageID #: 55). The ALJ found these opinions persuasive because they were "consistent with and supported by the totality of the evidence received through the date of [the] decision." (*Id.*). Notably, Claimant does not challenge the ALJ's treatment of these opinions and "[a]n RFC determination that is supported by the medical opinions of state agency physicians

14

is generally supported by substantial evidence." *Sittinger v. Comm'r of Soc. Sec.*, No. 1:22-CV-01927-BYP, 2023 WL 6219412, at *13 (N.D. Ohio Sept. 7, 2023), *report & recommendation adopted sub nom.*, 2023 WL 6214530 (N.D. Ohio Sept. 25, 2023); *see Maldonado o/b/o A.C. v. Kijakazi*, No. 4:20-CV-1878, 2022 WL 361038, at *6 (N.D. Ohio Jan. 14, 2022) ("There is ample case law concluding that State Agency medical consultative opinions may constitute substantial evidence supporting an ALJ's decision.") (collecting cases), *report & recommendation adopted sub nom.*, 2022 WL 356557 (N.D. Ohio Feb. 7, 2022). As correctly argued by the Commissioner, Claimant fails to point to any medical opinion with more restrictive limitations than those considered by the RFC. Rather, Claimant's assertion that he cannot stand the requisite six hours for light work appears to be based on his own testimony, which the Court concluded above the ALJ properly discounted.

Because the RFC for light work is supported by substantial evidence, the Court must defer to the ALJ's decision.

## VI. Conclusion

Based on the foregoing, it the Court AFFIRMS the Commissioner of the Social Security Administration's final decision denying to Plaintiff benefits. Plaintiff's Complaint is DISMISSED.

Dated: January 17, 2024

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE